```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

AGATHA THOMAS, MARIE EDWARD, and
ANGEL DANCIL,

        Plaintiffs,
v.                                    Case No. 8:17-cv-1586-T-33MAP

CARRINGTON'S CARING ANGELS, LLC,
STEPHANIE CARRINGTON, RONSHAI
DAVIS, and AAJA LOVE CARE, INC.,

        Defendants.
_____/
```

**ORDER**

This matter is before the Court pursuant to Defendants Carrington's Caring Angels, LLC and Stephanie Carrington's Motion for Summary Judgment (Doc. # 44), which was filed on December 10, 2017. Plaintiffs Agatha Thomas, Marie Edward, and Angel Dancil filed a response in opposition (Doc. # 46) on December 21, 2017. For the reasons that follow, the Court denies the Motion.

**Discussion**

Three Plaintiff home healthcare workers (Agatha Thomas, Marie Edward, and Angel Dancil) sue four separate Defendants (Carrington's Caring Angels, LLC, Stephanie Carrington, Ronshai Davis, and AAJA Love Care, Inc.) in this FLSA action. (Doc. # 1). Two Defendants, Davis and AAJA Love Care, Inc., are in default and have not participated in the proceedings. (Doc. ## 25, 26). The two active Defendants, Carrington's Caring Angels, LLC and Stephanie Carrington, have filed a

Motion for Summary Judgment. (Doc. # 44). The Carrington Defendants argue: (1) they are not an "enterprise" covered by the FLSA; (2) they had no involvement with Thomas and Dancil; and (3) Edward worked as an independent contractor for only three weeks and was not an employee. As explained below, the Carrington Defendants have not met their burden of establishing that they are entitled to relief as a matter of law on these issues. The Court accordingly denies the Motion for Summary Judgment.

**A.   Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law.

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc. 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th

3

Cir. 1988)). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### B. FLSA Coverage and the Home Care Final Rule

The Complaint alleges that the Carrington Defendants "are an enterprise engaged in commerce within the meaning of the FLSA." (Doc. # 1 at ¶ 17). Generally speaking, "the FLSA covers a company if the company's gross receipts equal or exceed $500,000 and if the company employs any person who either engages in commerce or in the production of goods for commerce or handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce." Clements v. Randolph Hotel, Inc., No. 8:16-cv-3395-T-23TBM, 2017 U.S. Dist. LEXIS 76261, at *1 (M.D. Fla. May 19, 2017)(internal citation omitted). The Carrington Defendants assert they have not grossed $500,000, and therefore, enterprise coverage does not exist. "Carrington's Caring Angels, LLC is just an up and coming business and does not make anywhere close to $500,000 per year." (Carrington Aff. Doc. # 45 at ¶ 6).

Plaintiffs do not weigh in on whether the Carrington Defendants meet the $500,000 gross income requirement for FLSA

4

enterprise coverage. Instead, they contend that recent legislation, the Home Care Final Rule, mandates Plaintiffs be paid FLSA overtime: "Regardless of the gross earning of the Employer, the change in the law effective January 1, 2015, in essence, makes an agency providing home care services obligated to pay minimum wages and overtime pay." (Doc. # 46 at 18).

Plaintiffs explain that, prior to October 13, 2015, the FLSA exempted domestic service employees from minimum wage and maximum hour requirements. See 29 U.S.C. § 213(a)(15). But, on October 1, 2013, the Department of Labor issued the Home Care Final Rule. 29 C.F.R. § 552. The Home Care Final Rule became effective on October 13, 2015, after various appellate proceedings took place. See Alves v. Affiliated Home Care of Putnam, Inc., No. 16-cv-1593 (KMK), 2017 U.S. Dist. LEXIS 17893, at *7 (S.D.N.Y. Feb. 7, 2017)(describing application of the Home Care Final Rule).

Plaintiffs submit that, under the Home Care Final Rule, direct care workers are deemed covered under the FLSA and are entitled to overtime pay if any of the following apply:

1. If they are employed by an agency or another employer other than the person being assisted or that person's family or household;
2. If the duties include medically related services;
3. If more than 20% of the work time is spent helping the person assisted with activities of daily living (ADL's) and instrumental

>    activities of daily living (IADL's);
> 4. If they perform duties that primarily benefit members of the household other than the person being assisted.

Plaintiffs rely on 29 C.F.R. § 552, 78 FR 60454-01, and detailed reports, guidance, and fact-sheets posted on the United States Department of Labor's website: www.dol.gov/whd/homecare/workers.htm.

The Carrington Defendants do not address any of these factors and do not discuss the application of the Home Care Final Rule.  In addition, although Plaintiffs bring the Home Care Final Rule to the Court's attention, Plaintiffs do not address the four factors head-on, or explain the manner in which the Rule specifically applies in this case.  The Court accordingly denies the Carrington Defendants' Motion for Summary Judgment to the extent it seeks to avoid FLSA coverage.

    **C.**    **Who Worked for the Carrington Defendants?**

Edward and Thomas are Certified Nursing Assistants and Dancil is a home health aide/medical technician. (Doc. # 46 at 7). Thomas, Edward, and Dancil claim that they worked for the Carrington Defendants and provided home health care to an individual named Laura Johnson.  Johnson, who suffers from cerebral palsy, but has not been declared mentally incompetent, states that she hired Carrington's Caring Angels for home health care and Carrington's Caring Angels provided

Thomas, Edward, and Dancil, among others. (Johnson Aff. Doc. # 46-4 at ¶¶ 3-6). Johnson understood that Thomas, Edward, and Dancil "were employed by Carrington's Caring Angels." (Id. at ¶ 7). Johnson also believed that defaulted Defendant Davis "was an agent for Carrington's Caring Angels and was billing care through Carrington's Caring Angels' guidelines." (Id. at ¶ 9).

Thomas, Edward, and Dancil each filed an affidavit in support of their position that they were employed by the Carrington Defendants. Among other statements, Dancil claims she "accepted a position with Carrington's Caring Angels, LLC" and "worked from April 20, 2017 through May 9, 2017." (Dancil Aff. Doc. # 46-2 at ¶ 1). Dancil explains she submitted an employment application and other "necessary certificates" for employment with Carrington's Caring Angels and that she was advised that Carrington's Caring Angels would provide continuing education courses to Dancil. (Id. at ¶¶ 3-4).

Similarly, Edward indicates that she provided an "employment application, employment references, [and] licensure" information to the Carrington Defendants and was hired to care for Johnson. (Edward Aff. Doc. # 46-3 at ¶¶ 1, 3). Edward states that Carrington set her pay at $10.25 per hour and that she worked from February 24, 2017, through April 19, 2017. (Id. at ¶¶ 1-2).

7

Thomas avers that she also cared for Johnson (from March 20, 2017, through April 25, 2017), and that Davis contacted her and hired her. (Thomas Aff. Doc. # 46-1 at ¶ 1). Thomas explains that it is her belief that Davis was an agent of the Carrington Defendants and that Davis hired Thomas to work for the Carrington Defendants:

> Ronshai Davis indicated that I was to be paid $10.00 per hour, a rate that was selected by Davis for this job. I provided all documentation provided to me by Davis on Carrington's Caring Angels letterhead, including, an employment application, employment references, licensure and online certificates at ADP. I provided medical home health services to Laura Johnson and filled out timesheets for Carrington's Caring Angels, LLC being their letterhead, along with my notes of my activity within Laura Johnson's home. I was provided a check for my work, although I did not receive monies for all of the time that I had spent caring for Laura Johnson. It is my belief that Ronshai Davis was an employee and agent of Stephanie Carrington and Carrington's Caring Angels, LLC and spoke on their behalf. I attempted to contact Ronshai Davis to determine what I should do to receive my pay, but she never contacted me or returned my phone calls. After not being paid, I contacted Stephanie Carrington to determine where my pay was coming from. At that time, I was advised that she would have Davis call me, which she did. Davis told me she did not have time to deal with me, and hung up.

(Id. at ¶¶ 2-8).

Stephanie Carrington filed a competing affidavit in which she states that "the Plaintiffs Agatha Thomas and Angel Dancil have not had any dealings with myself or Carrington's Caring Angels, LLC and I did not even know who they were prior to

this lawsuit being filed." (Carrington Aff. Doc. # 45 at ¶ 3). Carrington acknowledges Edward's existence, but characterizes her an independent contractor, rather than an employee. (Id. at ¶ 4). In addition, Carrington submits that Edward only provided her services for three weeks, while Edward claims to have worked for the Carrington Defendants from February 24, 2017, through April 19, 2017. (Carrington Aff. Doc. # 45 at ¶ 4; Edward Aff. Doc. # 46-3 at ¶ 1).

In considering a motion for summary judgment, credibility determinations and the weighing of the evidence are jury functions, not those of a judge. See Anderson, 477 U.S. at 255. The parties' irreconcilable versions of the facts - specifically whether Thomas and Dancil were affiliated in any way with the Carrington Defendants - preclude the entry of summary judgment with respect to the status of Thomas and Dancil.

### D. **Employee vs. Independent Contractor**

The Carrington Defendants and Edward do agree that Edward performed duties for the Carrington Defendants. The Carrington Defendants seek summary judgment based on the argument that Edward was an independent contractor, rather than an employee.

The FLSA's overtime provisions apply to employees, but not independent contractors. Perdomo v. Ask 4 Realty & Mgmt.,

9

Inc., 298 F. App'x 820, 821 (11th Cir. 2008). "A determination of employment status under the FLSA . . . is a question of law." Id. In determining whether an individual is an employee, instead of an independent contractor, courts apply the "economic realities" test. Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311-12 (11th Cir. 2013). This test requires the Court to "look past the labels the parties apply to their relationship, and to examine both whether Plaintiff's relationship to Defendant is that of a traditional employee and to what extent Plaintiff is economically dependent upon Defendants." Castro v. Sevilla Props., LLC, No. 13-cv-22466, 2013 U.S. Dist. LEXIS 181210, at *6 (S.D. Fla. Dec. 30, 2013).

In the Eleventh Circuit, courts consider the following factors in determining an individual's employment status:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship; and
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

Scantland, 721 F.3d at 1312. No one factor is outcome determinative, nor is the list exhaustive. Id. "Ultimately, in

considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" Id. (citing Mednick v. Albert Enters., Inc., 508 F.2d 297, 301-02 (5th Cir. 1975)).

The Court denies the Motion for Summary Judgment because the Carrington Defendants have not met their burden of showing that Edwards was an independent contractor. Among other problems, the Carrington Defendants only address two of the six factors. And, of the two factors addressed (degree of control exercised over the worker and duration of relationship), the Carrington Defendants mostly present the arguments of counsel and incorporate little, if any, record evidence into such arguments. For example, the Defendants generally assert: "Here, it is readily apparent that the Plaintiffs were independent contractors; and therefore, the FLSA does not apply." (Doc. # 44 at 6).

The closest the Carrington Defendants come to relying on admissible record evidence to support their arguments is when such Defendants point to statements in the "Independent Contractor's Agreement" signed by Edward on February 24, 2017. (Doc. # 44-1). In that Agreement, Edward agreed: "I will be acting as an independent contractor and not an employee to CCA (The Company). I understand that CAA does not and will not

control the time I report to work, the time actually spent on any job, and the time I leave the job." (Id. at 8). Edward also acknowledged in the Agreement that Carrington "does not and will not control in any respect the manner and means in which I perform my duties." Id. But the labels and statements contained in such an agreement do not control in the context of determining employment status in a FLSA action. See Scantland, 721 F.3d at 1311 (the relevant inquiry "is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'"(citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947))). And, "putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]." Id. As stated in Usery v. Pilgrim Equipment Co., 527 F. 2d 1308, 1312 (5th Cir. 1976), "It is not significant how one 'could have' acted under the contract terms. The controlling economic realities are reflected by the way one actually acts."

The Carrington Defendants fall woefully short of meeting their burden of establishing that Edward was an independent contractor. Among other considerations, the Carrington Defendants do not discuss Edward's opportunity for profit and loss depending upon managerial skill, Edward's investment in

tools necessary for the job or the relative investments of the parties, whether the services Edward performed required a special skill, or the extent to which Edward's services were an integral part of the Carrington Defendants' business. The scant information provided does not justify a finding that Edward was an independent contractor. The Court accordingly denies the Motion for Summary Judgment on this issue.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Carrington's Caring Angels, LLC and Stephanie Carrington's Motion for Summary Judgment (Doc. # 44) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of January, 2018.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE